THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRACEY SEARS,<br><br>               Plaintiff,<br><br>   v.<br><br>THE BOEING COMPANY, an Illinois Corporation licensed to do business in the State of Washington; and JAMES MORRISON, individually and together with "JANE DOE" MORRISON and the marital community composed thereof,<br><br>               Defendants. | No. 2:11-cv-01998<br><br>BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR:<br>February 10, 2012 |

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998)

03002-1574/LEGAL22324570.5

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF RELEVANT FACTS ...............................................................2

        A.      Boeing is an Equal Opportunity Employer.................................................2

        B.      Plaintiff's Job at Boeing ............................................................................2

        C.      Plaintiff and Morrison Exchanged Text Messages on a Saturday Morning
                in December 2010 When Neither Was at Work ..........................................3

        D.      Plaintiff's Vague Descriptions of Three "Inappropriate Conversations"
                with Morrison in October or November 2010 ............................................4

        E.      Boeing Suspends and then Terminates Morrison After Plaintiff Brings
                Concerns About Morrison to Boeing's Attention .......................................5

        F.      Boeing Promotes Plaintiff ..........................................................................6

        G.      Plaintiff Files Her Lawsuit .........................................................................6

III.    ARGUMENT .........................................................................................................7

        A.      Summary Judgment Standard .....................................................................7

        B.      The Court Should Grant Summary Judgment on Plaintiff's Hostile Work
                Environment Claim .....................................................................................8

                1.      Standard Governing Hostile Work Environment Claims...............8

                2.      Plaintiff Cannot Demonstrate that Morrison's Text Message Photo
                        Was "Unsolicited"..........................................................................9

                3.      Plaintiff Cannot Establish That the Alleged Harassment Was So
                        Severe and Pervasive That It Altered the Terms and Conditions of
                        Her Employment ..........................................................................10

                4.      Morrison's Conduct is Not Attributable to Boeing ....................16

IV.     CONCLUSION ....................................................................................................17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## I.    INTRODUCTION

The Boeing Company seeks summary judgment against Plaintiff Tracey Sears's single claim of sexual harassment because she invited the alleged misconduct and, in any event, the conduct was not severe or pervasive enough to create a hostile work environment and cannot be imputed to Boeing. Each of these reasons provides an independent basis for dismissal.

The facts in this case are straightforward and, for purposes of this motion, undisputed. Plaintiff is a current Boeing employee who asserts a hostile work environment claim under Washington law based on her interactions with James Morrison, a former Boeing employee. The claim is premised on a exchange of text messages between Plaintiff and Morrison on a Saturday morning when neither was at work. She claims that Boeing is liable for a hostile work environment because Morrison asked Plaintiff to send him some pictures, and when Plaintiff responded "You first," Morrison sent her a photo of a naked male. Plaintiff also appears to base her claim on a handful of what she describes as "inappropriate" comments by Morrison, although she is able to provide few details regarding the content or timing of these alleged conversations.

Plaintiff first brought concerns about Morrison to Boeing's attention more than six weeks after the conduct occurred. Boeing undertook an investigation of her allegations, suspended Morrison pending its investigation, and terminated him at the conclusion of the investigation. Plaintiff suffered no adverse employment action either before or after Boeing's investigation. In fact, since the events giving rise to Plaintiff's Complaint, Boeing has promoted her.

Plaintiff's hostile work environment claim fails in nearly every possible way. Plaintiff solicited the conduct she now complains of by asking Morrison to send her pictures "first." Plaintiff does not allege the kind of "severe and pervasive" harassment necessary to support a hostile work environment claim. And even if Plaintiff could otherwise make out the elements of a hostile work environment claim—which she cannot—Morrison's conduct is not imputable to Boeing. Boeing took prompt and effective action to respond to Plaintiff's concerns about

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03002-1574/LEGAL22324570.5

Morrison. Boeing removed Morrison from the workplace while it investigated Plaintiff's complaint and then terminated Morrison at the conclusion of the investigation.

Plaintiff's hostile work environment claim fails as a matter of law. Boeing therefore respectfully asks the Court to grant summary judgment in its behalf and dismiss Plaintiff's lawsuit in its entirety.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Boeing is an Equal Opportunity Employer

Boeing is an equal opportunity employer that is committed to fostering a work environment where all employees are treated fairly with respect. It maintains and enforces a Workplace and Sexual Harassment Policy that, among other things, prohibits sexual and sex-based harassment. *See* Declaration of Matthew Slichko ("Slichko Decl."), ¶ 2 & Ex. A. As described in the policy, Boeing's anti-harassment policy is enforced primarily by Boeing's Equal Employment Opportunity ("EEO") Office. *Id.* Employees with EEO-related concerns are instructed to contact their line management, an EEO representative, Human Resources, or any other manager. *Id.*

Boeing takes measures to ensure that employee misconduct, including harassment, is brought to its attention. For example, each year, employees (including Plaintiff) review and sign the Boeing Code of Conduct, which directs employees to promptly report any illegal or unethical conduct to appropriate authorities including Boeing Ethics,[1] Law, Security, and EEO. *See* Declaration of Valerie L. Hughes ("Hughes Decl."), Ex. A.

### B.    Plaintiff's Job at Boeing

In 2006, Boeing hired Plaintiff as a mechanic at its Renton, Washington facility. *See id.*, Ex. B (Sears Dep. 31:1-6, 36:19-37:8). Plaintiff worked on wing assembly for Boeing's 737 aircraft. *Id.* (Sears Dep. 37:9-19).

---

[1] Boeing's Ethics Department is tasked with investigating violations of the company's ethics policies (such as its conflict of interest policy).

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Construction of the 737 wings proceeds in stages. Plaintiff was part of the "leading edge" shop within the larger 737 wings organization. Leading edge is divided into three "positions" laid out in a long row, essentially, three stops on a manufacturing line. *Id.* (Sears Dep. 42:17-43:5, 86:15-24). The leading edge area is large. It is more than three 737 wings long (i.e., a single wing for each position) with space in between each position. *Id.* (Sears Dep. 41:10-16, 86:15-24).

During the period relevant to this lawsuit, Plaintiff worked in Position One. *Id.* (Sears Dep. 43:10-11). Position One was supervised by Charles Graves. *Id.* (Sears Dep. 132:3-132:20); *see also* Slichko Decl. ¶ 4. Positions Two and Three were supervised by Morrison. Hughes Decl., Ex. B (Sears Dep. 39:12-24, 43:6-9). Morrison did not supervise Plaintiff, but did supervise employees working in the adjoining areas of the leading edge shop.

**C.     Plaintiff and Morrison Exchanged Text Messages on a Saturday Morning in December 2010 When Neither Was at Work**

Plaintiff's hostile work environment claim is premised on an incident that occurred when Plaintiff was not at work. *Id.* (Sears Dep. 71:6-15). On the morning of Saturday, December 4, 2010, Plaintiff received a text message from Morrison stating "Send me some pictures." *Id.* (Sears Dep. 69:4-23, 71:6-15). Plaintiff was in bed and the text message awakened her. *Id.* (Sears Dep. 71:6-15). In his text message, Morrison did not specify what kind of pictures he had in mind. Nonetheless, Plaintiff was "certain" and felt it was "very obvious" that "he wanted naked pictures of [her]." *Id.* (Sears Dep. 76:2-77:15).

Believing that Morrison was asking her to send naked pictures of herself to him, Plaintiff responded to his text "You first." *Id.* (Sears Dep. 75:19-21). Plaintiff now states that she did not *actually* want Morrison to send her a picture "first," and thought "in [her] mind" that if she told Morrison "You first," he would not send her anything. *Id.* (Sears Dep. 77:16-78:5). Plaintiff did not consider sending Morrison any other response to his "Send me some pictures" text message. *Id.* (Sears Dep. 77:25-79:2). That is, notwithstanding the entire universe of potential responses

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

available to her, including "No," "Leave me alone," or "Go away,"—or simply ignoring the text altogether—Plaintiff invited Morrison to send her a picture "first." *Id.* (Sears Dep. 79:3-18).

In response to Plaintiff's request, Morrison texted her a picture. *Id.* (Sears Dep. 79:3-18). The picture showed the torso, genitals, and legs of a nude male. Plaintiff believes the picture to be of Morrison. Compl. ¶ 5.2.

Plaintiff did not immediately respond to Morrison's text. *Id.* (Sears Dep. 79:19-80:11). A few days later, however, she apologized to him for not responding. She texted Morrison to "apologize for basically blowing [him] off the other day," stating that "wasn't [her] intention at all." *Id.* (Sears Dep. 112:16-113:9). Sears explained to Morrison by text that she had "a lot going on right now personally" and she was "just trying to maintain." *Id.* (Sears Dep. 112:25-113:6). Morrison responded "No problem it is ok." *Id.*, Ex. C.

Plaintiff never told Morrison that the photo he sent her was unwanted or unwelcome. *Id.*, Ex. B (Sears Dep. 126:24-127:7). Morrison never sent Plaintiff any other pictures of himself or any other text messages she thought were inappropriate. *Id.* (Sears Dep. 127:13-15, 127:19-128:5, 158:1-9). He never touched her inappropriately or attempted to do so. *Id.* (Sears Dep. 127:8-10). He never physically threatened her. *Id.* (Sears Dep. 127:11-12). Indeed, Plaintiff believes that after she failed to respond to his photo, Morrison "got the hint that [she was] not interested in him sexually" because he was "leaving her alone." *Id.* (Sears Dep. 96:14-97:5).

**D.  Plaintiff's Vague Descriptions of Three "Inappropriate Conversations" with Morrison in October or November 2010**

In her Complaint, Plaintiff also asserts that Morrison had "increasingly inappropriate conversations" with her in October or November 2010. Compl. ¶ 5.1. At her deposition, Plaintiff could not remember the details of these conversations. *Id.* (Sears Dep. 63:7-64:3). She also explained that her work environment was noisy, and she typically had hearing protection on and sometimes the radio. *Id.* (Sears Dep. 55:22-24, 64:16-19, 170:22-171:2). In any event, Plaintiff described only three verbal exchanges with Morrison she deemed inappropriate:

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03002-1574/LEGAL22324570.5

- One day, Plaintiff wore her hair in a bun, a new hairstyle for her, as she typically wore her hair in a ponytail. *Id.* (Sears Dep. 52:19-54:5). Morrison walked up behind her while she was working and "said something about pulling [her] hair." *Id.* (Sears Dep. 53:15-54:5). Plaintiff did not respond to the comment or report it to Boeing Human Resources. *Id.* (Sears Dep. 55:19-56:23).

- On another occasion, Morrison told a "that's what she said" joke about a drill and then laughed. *Id.* (Sears Dep. 173:3-175:8). Plaintiff felt that this was like "[s]omething I'd hear the teenage boys saying" and ignored it because she did not think it was funny. *Id.* (Sears Dep. 173:3-21, 174:18-175:2, 175:15-176:1, 179:14-180:1).

- Finally, one day Morrison told Plaintiff something to the effect of that if she "put some makeup on and dress[ed] nicer, there were managers at the Boeing company that dated employees." *Id.* (Sears Dep. 63:21-65:18). Plaintiff told him "Well, that's nice, but I don't date where I work." *Id.* That was the end of the exchange.

Plaintiff remembers no specifics of any other "inappropriate conversations" with Morrison. *Id.* (Sears Dep. 65:19-66:14; 68:19-69:3).

### E. Boeing Suspends and then Terminates Morrison After Plaintiff Brings Concerns About Morrison to Boeing's Attention

By December 2010, Plaintiff had worked for Boeing for four and one-half years and was personally aware of the Human Resources Department and other employee resources that Boeing provided. *Id.* (Sears Dep. 162:16-163:11). In addition to signing Boeing's Code of Conduct annually, Plaintiff had particular familiarity with Human Resources because she had been the subject of a Human Resources investigation that resulted in her receiving disciplinary action for making inappropriate comments about a coworker. *Id.* (Sears Dep. 58:6-59:20); *see also id.*, Ex. D. Nonetheless, Plaintiff did not immediately bring Morrison's conduct to Boeing's attention.

Following a conversation with her union representative, Plaintiff contacted and met with a Boeing Ethics employee on January 24, 2011, more than six weeks after receiving Morrison's

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03002-1574/LEGAL22324570.5

texted photo. *Id.* (Sears Dep. 87:8-88:15, 162:22-163:4). She was immediately referred to Boeing's EEO Office, which assigned investigator Kara Neal to Plaintiff's complaint. *Id.* (Sears Dep. 90:3-22, 128:6-8, 163:2-4). That same day, Neal met with Plaintiff and scheduled an appointment to take Plaintiff's statement two days later. *Id.* (Sears Dep. 163:3-11).

On January 26, 2011, Plaintiff met with Neal and described her concerns about Morrison. *Id.* That same day, Boeing suspended Morrison pending the investigation into Plaintiff's allegations. *See* Slichko Decl. ¶¶ 4-5. Morrison was escorted off Boeing premises. *Id.*, ¶ 5.

Boeing EEO then proceeded with its investigation. *Id.* At the conclusion of the investigation, Boeing determined that Morrison had violated Boeing's Workplace and Sexual Harassment Policy and terminated his employment on March 3, 2011. *See id.*; *see also* Hughes Decl., Ex. B (Sears Dep. 158:10-16); *see* Slichko Decl. ¶ 5. Morrison was not at work from the day of his suspension on January 26, 2011 to the day of his termination.

**F.      Boeing Promotes Plaintiff**

On July 29, 2011, Plaintiff was promoted to a new position outside the leading edge shop. Her new position has a higher pay grade and salary. Hughes Decl., Ex. B (Sears Dep. 101:17-102:4, 166:9-14).

Thus, after Plaintiff informed Boeing of her complaint against Morrison, the following events occurred: (1) Morrison was suspended pending investigation; (2) Morrison was fired at the conclusion of Boeing's investigation; and (3) Plaintiff was promoted.

**G.      Plaintiff Files Her Lawsuit**

On April 26, 2011, Plaintiff filed this lawsuit in King County Superior Court. Plaintiff's Complaint set out what appeared to be eleven different claims falling into five basic categories: (1) sex discrimination under the Washington Law Against Discrimination (the "WLAD"), Chapter 49.60 RCW, pursuant to both a "disparate treatment" and "disparate impact" theory of liability (Compl. ¶¶ 6.1, 6.4-6.5); (2) sexual harassment/hostile work environment on the basis of sex under the WLAD (Compl. ¶¶ 6.1-6.3); (3) retaliation under the WLAD (Compl. ¶ 6.6); (4)

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

four common law negligence claims (Compl. ¶ 6.7); and (5) three intentional tort claims (Compl. ¶ 6.7).

Prior to filing an Answer, Boeing moved to dismiss Plaintiff's Complaint in its entirety pursuant to Washington Civil Rule 12(b)(6). The Honorable Theresa Doyle of King County Superior Court granted Boeing's motion in the main, dismissing ten of Plaintiff's eleven claims. Only Plaintiff's hostile work environment claim survived the motion to dismiss.

On December 2, 2011, Boeing removed the matter to this Court.[2] Plaintiff's single remaining claim is now ripe for summary judgment given the fuller factual record

## III.   ARGUMENT

### A.   Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *N.W. Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is therefore appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once the moving party has carried this initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact actually exists. *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party thus "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. It must present significant probative evidence tending to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

---

[2] Boeing removed this action after it learned that Plaintiff had never served Morrison and there existed complete diversity of the parties.

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03002-1574/LEGAL22324570.5

Bare allegations, speculations, or conclusions, as well as inadmissible evidence or even a "scintilla" of evidence, are insufficient to meet this burden. *See Nelson v. Pima Comm. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996); *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993); *Forsberg v. Pac. N.W. Bell Tele. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988). Failure of proof as to any essential element of a party's claims means that no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322; *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1459 (9th Cir. 1985).

**B.     The Court Should Grant Summary Judgment on Plaintiff's Hostile Work Environment Claim**

Plaintiff's hostile work environment claim suffers from multiple deficiencies. Each is fatal to her claim. First, Plaintiff cannot premise a hostile work environment claim on Morrison's text message photo because she invited the conduct about which she now complains. In response to Morrison's request that she send him some pictures, she told him "You first." Second, Plaintiff has suffered no adverse employment action. She remains employed by Boeing—indeed, she has been promoted, whereas Morrison was fired—and none of the acts she complains of constitute harassment so severe and pervasive that they altered the terms and conditions of her employment. Third, Boeing took prompt, corrective remedial action after learning of Morrison's conduct, and thus cannot be held liable for his conduct in any event.

**1.     Standard Governing Hostile Work Environment Claims**

The Washington Law Against Discrimination ("WLAD") prohibits employers from discriminating against an individual with respect to the terms, conditions, or privileges of employment because of such individual's sex. RCW 49.60.180(2). One form of workplace sex discrimination occurs where an employer tolerates a hostile work environment.

To establish a prima facie case of a hostile work environment based on sex, a plaintiff must show:

> (1) The conduct was unwelcome, offensive, and unsolicited by the plaintiff;

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03002-1574/LEGAL22324570.5

(2) The conduct would not have occurred had the employee been of the opposite sex;

(3) The conduct was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and

(4) The conduct may be imputed to the employer.

*MacDonald v. Korum Ford*, 80 Wn. App. 877, 885 (1996) (internal quotation marks and citations omitted). The work environment must be both objectively abusive and subjectively perceived as such by the plaintiff. *Clarke v. State Attorney General's Office*, 133 Wn. App. 767, 787 (2006). This is substantially the same analysis applicable to federal claims brought under Title VII of the Civil Rights Act of 1964. *See, e.g.*, *Mays v. King Cty.*, No. CV07-1114-JCC, 2008 WL 3875435, at *3 (W.D. Wash. Aug. 14, 2008) (Coughenour, J.) (noting that because "Washington sex discrimination law parallels that of Title VII, . . . it is appropriate to consider [plaintiff's] state and federal discrimination claims together") (internal quotation marks omitted).

## 2.   Plaintiff Cannot Demonstrate that Morrison's Text Message Photo Was "Unsolicited"

Plaintiff's hostile work environment claim fails at the outset because Plaintiff cannot establish that Morrison's decision to send a nude picture to her was "unsolicited"—the first element of a hostile work environment claim. To the contrary, she specifically invited him to send her a picture first.

Washington courts have specifically defined when conduct is "unwelcome" within the meaning of the first element of a hostile work environment claim. "'Unwelcome' harassment is undesirable or offensive behavior *which the employee did not solicit or incite*." *Graves v. Dep't of Game*, 76 Wn. App. 705, 713 (1994) (emphasis added). Thus, a plaintiff cannot premise a sexual harassment claim on conduct that she invited and in which she voluntarily participated. *See, e.g.*, *Vasconcelos v. Meese*, 907 F.2d 111, 112 (9th Cir. 1990) (affirming grant of summary judgment to employer where district court found that the plaintiff "had invited [the] sexual advances," in question).

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

03002-1574/LEGAL22324570.5

Here, Plaintiff's hostile work environment claim rests primarily on the single incident in which Morrison sent a picture to Plaintiff. But Morrison's decision to send Plaintiff this picture cannot support Plaintiff's hostile work environment claim because she invited him to do so. Plaintiff states that she was "certain" that Morrison wanted her to send him a naked picture of herself. Hughes Decl., Ex. B (Sears Dep. 76:2-77:15). In response to a text message she perceived to be soliciting nude pictures, she responded "You first." *Id.* (Sears Dep. 75:19-21). That is, Plaintiff invited Morrison to send her a nude picture of himself "first" before she would reciprocate.

Plaintiff now claims that, in fact, she did *not* want Morrison to send her a picture. Whatever her subjective intentions, the fact remains that she told Morrison "You first." She did not ignore the text or tell Morrison "no." She invited him to send her a picture. In no sense was Morrison's behavior "unsolicited" or "uninvited." *MacDonald*, 80 Wn. App. at 885. Plaintiff directly invited Morrison to send her a picture "first." Morrison has suffered the consequences for his decision to do so, but Plaintiff cannot maintain a hostile work environment claim against Boeing for conduct that she invited. Plaintiff's sexual harassment claim fails for this reason alone.

### 3.    Plaintiff Cannot Establish That the Alleged Harassment Was So Severe and Pervasive That It Altered the Terms and Conditions of Her Employment

Next, Plaintiff fails to present colorable evidence that the single photo and three comments she received from Morrison over a three month period constitute severe and pervasive harassment that altered the conditions of her employment—the third prong of a hostile work environment claim. The WLAD is not a "general civility code" intended to proscribe all boorish or inappropriate workplace conduct. *Adams v. Able Bldg. Supply, Inc.*, 114 Wn. App. 291, 297 (2002). It is, instead, a civil rights code prohibiting workplace discrimination by *employers*. Accordingly, sexual harassment claim only lies where the plaintiff is subject to such "extreme" conduct that it actually amounts "to a change in the terms and conditions of employment." *Id.*

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) –
10
03002-1574/LEGAL22324570.5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

To determine whether a work environment is sufficiently hostile to violate the WLAD, Washington courts require the conduct at issue to "be so pervasive as to alter the terms and conditions of employment and create an abusive working environment." *Clarke*, 133 Wn. App. at 787. In conducting this inquiry, the court looks to the "totality of the circumstances and at whether the conduct involved words alone or also included physical conduct." *Id.*; *see also MacDonald*, 80 Wn. App. at 885 (employing the federal "totality of the circumstances" analysis in determining whether a hostile environment existed in violation of the WLAD).[3]

"The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004); *see also Glasgow v. Georgia-Pac. Corp.*, 103 Wn.2d 401, 406 (1985); *Washington v. Boeing Co.*, 105 Wn. App. 1, 10-11 (2000). Mere offensive behavior, without more, is insufficient to support a hostile work environment claim. *Clarke*, 133 Wn. App. at 785 (citing *Adams*, 114 Wn. App. 291). Casual, isolated or trivial instances of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. *Glasgow*, 103 Wn.2d at 406; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). Harassment alters the terms and conditions of a plaintiff's employment where it "impair[s] [Plaintiff's] ability to do her job in the long-term." *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000). Although a single incident may suffice to constitute a hostile work environment, the incident must be "extremely severe."[4]

---

[3] "'[F]ederal cases interpreting Title VII are 'persuasive authority for the construction of RCW 49.60'" because "RCW 49.60 substantially parallels Title VII." *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 793 (2005) (quoting *Oliver v. Pac. N.W. Bell Tel. Co.*, 106 Wn. 2d 675, 678 (1986)).

[4] *Compare id.* (harassment not severe and pervasive where over Plaintiff's objections, supervisor placed his hand on Plaintiff's stomach, slipped his hand under her bra to fondle her bare breast, and told her that she did not need to worry about cheating on her husband because he would "do everything") *with Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967-68 (9th Cir. 2002) (denying summary judgment where plaintiff was raped by business associate while on the job).

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) –
11

03002-1574/LEGAL22324570.5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In this case, Plaintiff's hostile work environment claim essentially rests on the single text message photo Morrison sent Plaintiff at home in response to her "You first" request. When Plaintiff did not reciprocate by sending him a photo in return, Morrison never sent her another inappropriate photograph or text message. Plaintiff never told Morrison that his photograph was unwelcome. To the contrary, she later apologized for "blowing him off." As a matter of law, a single text message received outside of work does not constitute severe and pervasive harassment that altered the terms and conditions of Plaintiff's employment with Boeing.

The single text message photo at issue here is simply not the kind of egregious sexual assault upon which a "single incident" hostile work environment claim can be premised. *See, e.g., Lavarias v. U.S. Dept. of the Navy*, No. 09-00120 JMS/LEK, 2009 WL 2513461, at *5 (D. Haw. Aug. 19, 2009) (holding that while "[s]exual assault or rape serve as examples of isolated incidents that might rise to the level of a hostile work environment," single incident where "Peeping Tom" spied on plaintiff in women's restroom did "not rise to the level of a hostile work environment"). Plaintiff does not allege Morrison touched her inappropriately. While physical misconduct is not necessarily required to support a hostile work environment, whether Plaintiff was physically assaulted or harassed is a key consideration under Washington law. *Clarke*, 133 Wn. App. at 787. In fact, courts have found far more pervasive and egregious misconduct insufficient as a matter of law than the single photo and few comments at issue here. In this regard, it is notable that many courts have dismissed hostile work environment claims where— unlike here—the plaintiff *did* allege she had been subjected to inappropriate sexual touching on one or more occasions.[5]

---

[5] *See MacDonald*, 80 Wn. App. at 886 (no hostile work environment where coworker kissed plaintiff, regularly came up behind her and placed his hand on her back, purposefully brushed past her in the hallway, and thanked plaintiff on one occasion while stroking his fly); *Brooks*, 229 F.3d at 926 (same, where coworker touched plaintiff "inappropriately on her stomach and breast" on one occasion); *see also Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 327-28 (5th Cir. 2004) (same, where the harasser, among other things, commented about another employee's body, slapped plaintiff on the behind with a newspaper, grabbed or brushed against her breast and behind, and attempted to kiss her); *Davis v. Tri Mfg., Inc.*, No. TH99–0142–C–M/H, 2000 WL 33281133, at *10 (S.D. Ind. Dec. 18, 2000) (same, where coworker "smacked" plaintiff on the butt, rubbed his groin across her butt on one occasion, and another coworker showed plaintiff lesbian pornography and a photograph of a penis inside a

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Moreover, Plaintiff received the text message photo while at home. The incident did not occur at work, and Morrison was not physically present. This necessarily diminishes the severity or potential threat posed by the situation. Many courts have granted summary judgment to the employer in far more egregious circumstances, such as where a male *directly* exposed himself to the plaintiff. For example, in *Jones v. Clinton*, the court dismissed a hostile work environment claim premised largely on a single incident where the Governor of Arkansas grabbed, fondled, and kissed the plaintiff, and then, after she told him she "was not that kind of girl," dropped his pants to expose his penis and told her to "kiss it." 990 F. Supp. 657, 663-64 (E.D. Ark. 1998). The court found that this incident, though "boorish," was not sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment. *Id.* at 674-76.

Similarly, in *Pirie v. Conley Group, Inc.*, the court dismissed a hostile work environment claim premised on an hour-long incident in which the plaintiff's lead officer engaged in inappropriate sexual banter, took the plaintiff into a room, turned off the lights, displayed his penis to her for three minutes, and urged her to look at the size of his penis and a birthmark located on his testicles. No. 4:02-CV-40578, 2004 WL 180259, *1-2 (S.D. Iowa Jan 7, 2004). The court concluded, "There was no actual or threatened violence or even any physical touching involved. Pirie was not restrained by McRae from leaving the location. . . . Thus, the single episode at issue here is not sufficiently severe to constitute severe and pervasive harassment. *Id.* at *13. Many other courts have reached the same result, dismissing hostile work environment claims where a male employee exposed himself to the plaintiff.[6]

---

vagina); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247-53 (11th Cir. 1999) (same, even given supervisor's "constant" following of employee and staring in a "very obvious fashion," two instances of making a sniffing sound while looking at the employee's groin area and, one incident of rubbing up against the employee's hip while touching her shoulder and smiling); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (same, where coworker made an appreciative comment about plaintiff's behind and deliberately touched her breasts); *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Saxton v. Am. Tel. & Tele. Co.*, 10 F.3d 526, 528 (7th Cir. 1993) (same, where plaintiff was rubbed and kissed on one occasion, and resisted an attempted groping on another).

[6] *Durkin v. Chicago*, 199 F. Supp. 2d 841-42, 850 (N.D. Ill. 2002) (dismissing hostile work environment claim where police academy recruit was subjected to frequent coarse and degrading language based on her gender by her supervisor and fellow recruits and, on one occasion, one of the recruits displayed his penis to her while

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) –
13

03002-1574/LEGAL22324570.5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Likewise, in cases more analogous to the facts alleged by Plaintiff, the receipt of pornographic pictures or images in the workplace is insufficient to constitute a hostile work environment. For example, in *Baer v. Sprint Long Distance*, the court found that a "single offensive incident" where a pornographic picture was emailed to Plaintiff's work computer did not demonstrate the "pervasiveness of discriminatory intimidation, ridicule and insult necessary to alter the conditions of employment," particularly where the employee involved was reprimanded for sending the picture. 60 F. Supp. 2d 209, 213 (S.D.N.Y. 1999).[7] In short, the single incident in which Morrison sent Plaintiff a text message photo while she was at home simply does not rise to the level of severe and pervasive harassment that altered the terms and conditions of Plaintiff's employment with Boeing.

Plaintiff fares no better to the extent she seeks to buttress a hostile work environment claim with the three "inappropriate conversations" she alleges she had with Morrison. *See* Page 4-5, *supra*. As an initial matter, it is not even clear that one of three comments—the "pull your hair" comment—had anything to do with Plaintiff's sex. *See Taha v. O'Donnell*, No. C09-0003 JCC, 2010 WL 1038468, at *5 (W.D. Wash. Mar. 17, 2010) (Coughenour, J.) (dismissing hostile work environment claim where the plaintiff offered nothing but her own speculation that racial animus motivated particular conduct). In any event, courts in Washington State and within the Ninth Circuit have dismissed as a matter of law claims resting on far more frequent, graphic, and offensive comments than the "pull your hair" and "that's what she said" and "make-up" comments at issue here.[8] Many courts elsewhere in the country have done the same.[9]

---

urinating and said, "suck this."), *aff'd by* 341 F.3d 606 (7th Cir. 2003); *Gwen v. Regional Transit Auth.*, 7 Fed. Appx. 496, 498 (6th Cir. 2001) (same, where plaintiff's co-worker twice exposed his genitals to her and approached her while making "rude and inappropriate comments.");

[7] *See also Beverly v. Genuine Parts Co.*, No. 3:04 CV 327-H,. 2006 WL 1285420, at *3-4 (W.D.N.C. May 8, 2006) (same, where copies of pornographic magazine were left on plaintiff's desk with notes saying that her picture should be in the magazine); *Baer v. Sprint Long Distance*, 60 F. Supp. 2d 209, 213 (S.D.N.Y. 1999) (same, where claim was premised on single incident where pornographic picture was emailed to plaintiff's computer); *Hale v. City of Dayton*, No. 18800, 2002 WL 191588, at *4 (Ohio Ct. App. Feb. 8, 2002) (same, where defendant showed coworkers a photo of a naked, overweight woman while asking them whether it resembled the plaintiff).

[8] *Washington*, 105 Wn. App. at 10-11 (no hostile work environment where plaintiff complained that she was called "dear" and "sweet pea" by her supervisor); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1106-07, 1110

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In sum, Plaintiff has not come close to alleging—much less producing evidence of—the type of severe and pervasive harassment necessary to support a hostile work environment claim. To be clear, Boeing does not approve of Morrison's conduct. That is why Boeing promptly suspended and then terminated Morrison after Plaintiff brought his behavior to Boeing's attention. But Plaintiff's hostile work environment claim is not brought against Morrison—it is brought against Boeing. The standards for judging when sexual harassment in the workplace becomes so serious that it fundamentally alters the nature of a plaintiff's job are well-established. They are not met here.

---

(2000) (no hostile work environment where supervisor, in conversation with plaintiff, called another female employee a "madonna," "regina," and "castrating bitch" and referred to women in general as "bitches and histrionics"); *MacDonald*, 80 Wn. App. at 886 (no hostile work environment where, among other things, coworker told plaintiff that "with [her] tits [she] should be able to . . . sell anything"); *Roche v. Audio Visual Servs. Group, Inc.*, No. 2:09–CV–01810–LDG, 2011 WL 2971034, at *2 (D. Nev. July 20, 2011) (same, where plaintiff alleged she was subjected to a "laundry list of misogynistic comments" including: "that, as a woman, she was only permitted to wear dresses or skirts" insinuations that she would "be able to sleep with clients in order to prevent those clients from doing business with competitors," and a variety of other comments, crude sexual jokes, and foul language including references to women as "whores," telling plaintiff to "stop being such a girl," and telling plaintiff to" twirl around in her dress"); *Panelli v. First Am. Title Ins. Co.*, 704 F. Supp. 2d 1016, 1020 (D. Nev. 2010) (affirming summary judgment for employer where managers referred to women as "bitches," would tell female employees "you look good today, I'd do you," growled when observing women and commented "I'd do her," pantomimed sexual intercourse, harassed an employee when touring a project nearby a brothel, stated that they wanted to enter the brothel and see if the wallpaper was "scratch & sniff," physically intimidated an employee by refusing to let her pass while making inquiry as to how good looking he must be, and discussed a marketing representative with "big tits" and said "all she had to do was just shake her tits . . . and she would get whatever she wanted").

[9] *Hale v. Village of Madison*, 493 F. Supp. 2d 928, 932 (N.D. Ohio 2007) (same, where coworker told plaintiff "a story about his wanting to put heat lamps on a female corpse so that he could have his way with her"); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 584-86 (11th Cir. 2000) (trial court should have granted judgment as a matter of law to defendant where university department coordinator, among other things, made frequent calls to plaintiff's house at night asking personal questions such as "Are you in bed yet?," "I was wondering how you were doing?," and "Are you talking to your boyfriend?"), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872, 874 (5th Cir. 1999) (holding that several incidents including the comment "your elbows are the same color as your nipples," that plaintiff had big thighs, and attempts to look down the plaintiff's dress, were insufficient to support hostile work environment claim); *Adusumilli v. City of Chi.*, 164 F.3d 353, 357, 361–62 (7th Cir. 1998) (same, when employee teased plaintiff, made sexual jokes, told her not to wave at police officers "because people would think she was a prostitute," commented about low-necked tops, leered at her breasts, and touched her arm, fingers, or buttocks on four occasions); *Hall v. S. Cent. Conn. Reg'l Water Auth.*, 28 F. Supp. 2d 76, 80, 86-87 (D. Conn. 1998) (same, where supervisor called plaintiff a "bimbo" and "stupid woman"); *Weiss v. Coca–Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993) (no sexual harassment when plaintiff's supervisor asked plaintiff for dates, asked about her personal life, called her a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs at her work station, and attempted to kiss her twice at work and once in a bar)).

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) –
15

03002-1574/LEGAL22324570.5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

### 4.      Morrison's Conduct is Not Attributable to Boeing

Finally, Plaintiff's claim fails because she cannot demonstrate that Morrison's conduct is "imputable" to Boeing—the fourth prong of a hostile work environment claim. *MacDonald*, 80 Wn. App. at 885. An employer is not automatically liable for a supervisor's conduct for purposes of a hostile work environment claim.[10] Instead, to "hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor . . . , the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action." *Glasgow*, 103 Wn. 2d at 407. An employee's mere dissatisfaction with the severity or alacrity of the employer's response does not establish that the response was insufficient. *Francom*, 98 Wn. App. 856-57.

One obvious means of determining whether an employer's response was reasonable is whether any additional sexual harassment occurs after the date on which the conduct was brought to the employer's attention. *See id.* at 857 ("The fact that the conduct never occurred again after [the date on which the employer was notified of the conduct] is proof that [the employer's] response was reasonable and adequate as a matter of law"). Here, Plaintiff first brought the substance of her complaint regarding Morrison to Boeing's attention on January 24, 2011. Boeing promptly interviewed Plaintiff, commenced an investigation, suspended Morrison to remove him from the workplace during the investigation, and terminated Morrison at the conclusion of its investigation.

These measures were effective. Plaintiff does not allege that Morrison sexually harassed her after she told Boeing what had happened in late January 2011.[11] There thus can be no dispute

---

[10] Only where the alleged harasser is in the company's "high echelons" of management such that he or she is the employer's "alter ego" can the employer be held directly liable for the harasser's conduct without a further showing. *See Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 853-54 (2000) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2267, 141 L.Ed.2d 633 (1998)). A Boeing first line manager is not Boeing's "alter ego" for purposes of a sexual harassment claim. *See Washington*, 105 Wn. App. at 11-12.

[11] Nor does Plaintiff allege that Morrison sexually harassed her after sending the December 4, 2010 photograph, such as by sending her additional photos, other text messages, or touching her. *Id.*, Ex. B (Sears Dep. 114:15-115:3).

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) –
16
03002-1574/LEGAL22324570.5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

that Boeing took reasonably prompt and adequate corrective action in response to Plaintiff's complaint regarding Morrison. Indeed, it took the most severe form of corrective action possible—it terminated Morrison. Thus, Morrison's conduct cannot be imputed to Boeing.

### IV.   CONCLUSION

Plaintiff's sexual harassment claim fails at least three of four prongs required under Washington law. Plaintiff cannot sustain a hostile work environment claim based on a photo that she *invited* by texting Morrison "You first." Further, that single photo, which Plaintiff requested and received while at home—coupled with a few comments of the "that's what she said" variety—do not constitute such severe and pervasive harassment that the terms and conditions of Plaintiff's employment were changed. Finally, Morrison's conduct cannot be imputed to Boeing because the Company took prompt and effective remedial action to investigate and resolve Plaintiff's concerns about Morrison. Each of these failings presents an independent basis for summary judgment. Accordingly, Boeing respectfully requests that the Court grant its motion and dismiss Plaintiff's Complaint in its entirety.

DATED: January 19, 2012

By: s/ Valerie L. Hughes
By: s/ William B. Stafford
Valerie L. Hughes #11859
William B. Stafford #39849
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email:  VHughes@perkinscoie.com
           WStafford@perkinscoie.com
Attorneys for Defendant
The Boeing Company

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) –
17
03002-1574/LEGAL22324570.5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

**CERTIFICATE OF SERVICE**

On January 19, 2012, I caused to be served upon counsel of record, at the address stated

below, via the method of service indicated, a true and correct copy of the following document:

**THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Thaddeus P. Martin
Thaddeus P. Martin & Associates
4928 109th Street SW
Lakewood, WA 98499

*Attorney for Plaintiff*

_____ Via hand delivery
_____ Via U.S. Mail, 1st Class, Postage
        Prepaid
_____ Via Overnight Delivery
_____ Via Facsimile
_____ Via Email
  **X**   Via Electronic Filing

I certify under penalty of perjury under the laws of the State of Washington that the

foregoing is true and correct.

DATED at Seattle, Washington, this 19th day of January, 2012.

By: s/ Valerie L. Hughes
By: s/ William B. Stafford
Valerie L. Hughes #11859
William B. Stafford #39849
**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email:  VHughes@perkinscoie.com
         WStafford@perkinscoie.com
Attorneys for Defendant
The Boeing Company

BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (No. 2:11-cv-01998) –
18
03002-1574/LEGAL22324570.5