1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT WESTERN
DISTRICT OF WASHINGTON AT SEATTLE

11  TRACY SEARS, Individually;

12
                                          NO. 2:11-cv-01998
13              Plaintiff,
                                          PLAINTIFF'S OPPOSITION TO
14  v.                                    DEFENDANT BOEING'S MOTION FOR
                                          SUMMARY JUDGMENT
15  THE BOEING COMPANY, as Illinois
    Corporation licensed to do business in the State
16  of Washington; and, JAMES MORRISON,
    individually and together with "JANE DOE"
17  MORRISON and the marital community
    composed thereof;
18
19              Defendant.

20

## I.   INTRODUCTION

21

22      The Plaintiff requests that this Court deny the Defendants' Motion for Summary

23  Judgment.  This case is about more than plaintiff's manager James Morrison showing his

24  penis to the plaintiff.  Manager Morrison engaged in regular acts of sexual harassment prior to

25  his exposure to the plaintiff.  This Court must take the plaintiff's sworn testimony on its face

26  and based on the plaintiff's testimony, she has a viable case under RCW 49.60.  RCW 49.60,

Opposition to MSJ                                    THADDEUS MARTIN &
1 of 14                                                  ASSOCIATES
                                                     4928 109th Street SW
                                                  Lakewood, Washington 98499
                                                        (253) 682-3420

Washington's Law Against Discrimination states that, the "legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of gender/sex is a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." Such acts should not occur in Washington State in this day and age, especially not at one of the state's best employers. This is not only bad for Washington State, but for the plaintiff it is humiliating. The defendants' motion is not well taken and should be firmly denied.

## II.    STATEMENT OF RELEVANT FACTS

This case arises out of sexually explicit and inappropriate behavior by a male Boeing manager to a subordinate female employee. The Boeing manager James Morrison, also named as a Defendant, made sexual jokes to Plaintiff for months prior to sending a photograph of his erect penis to her.

> Q.    Please describe for me the inappropriate conversations that you had with Mr. Morrison in October or November 2010?
>
> A.    The things he said- - <u>there were so many different things</u>. Where I was working was not around a lot of people and it was in an aisle way so he would walk by and say things that only I could hear. Like when I'd wear my hair a certain way, he said one tie about pulling my hair or something. I just remember some of the things he said it was just disgusting. Just uncomfortable.

Dep. Of Sears, P. 53:4-14.

> I remember that he insinuated dating, going out or meeting or something and I just would say things like I don't date at work. One time he told me if I would get up a little earlier and put some makeup on and dress nicer, there were managers at the Boeing Company that dated employees. Well, I would just say, that's nice but I don't date where I work[.]

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

> It's a noisy shop, we are riveting, we're drilling, we're doing all kinds of stuff.  So for him to say '<u>Hey come here and get close to me</u>' its not uncommon, but its creepy.  Creepy because of what he was saying.  Hey, if you just get up and put some makeup on in the morning, you coul have yourself a Boeing Manager as a boyfriend. . . . And I tried to be polite and he just wouldn't stop.  I didn't want to make him mad.  <u>He was my boss.</u>

Dep of Sears, P. 64.

Besides the comments from Manager Morrison about "pulling her hair," he made other inappropriate "joking" comments to her regularly, including the ubiquitous sexual insinuation/joke, "that's what she said" in response to certain statements Plaintiff made.  For example, if Plaintiff said something to the effect of: "let me grab the tool."  Morrison might respond: "that's what she said."  For example, when the plaintiff said her new drill was smaller, having more power and fitting better in her hand, Morrison responded with "That's what she said."  Dep. Of Sears, P. 173, L. 3-21.  Morrison often made this comment, obviously implying sexual innuendo at every turn, as testified to by plaintiff; it was always creepy, gross, sexual stuff. Dep of Sears, P. 174. L. 20-175, L. 12.  Plaintiff never laughed at Manager Morrison's comments because they repulsed her. Id., at P. 179, L. 14-25.

Then, on the weekend before Christmas 2010, he texted Plaintiff, asking her to "send some pictures."  In an effort to get rid of Morrison's overtures, Plaintiff did not send pictures to Morrison.  Morrison then sent Plaintiff a text message of his erect penis.  The text message sent of his penis is attached as Exhibit 8 hereto.  The picture he sent is attached so that the Court may see just how severe, egregious and shocking this behavior was.  Approximately one week later, Morrison began yelling at Plaintiff, cursing at her, being generally rude and threatened to have her fired and/or have a Corrective Action Memo (CAM) placed in her

Opposition to MSJ
3 of 14

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

personnel file and started to retaliate against her.  He did this, obviously, because she would not engage in his offensive and inappropriate sexual demands.

Defendants argue that plaintiff solicited and was not offended by Manager Morrison's behavior because she responded "you first" at his request for pictures, however, the plaintiff did not infer that Morrison was talking about sexual pictures and did not solicit sexual pictures:

> Q.    My question is, what did you think at the time that you got the request?
>
> A.    Again, I was grossed out by his prior conversations, the things he had said to me and I was just grossed out, disgusted, like Ugh, really?  Like, How do I make this stop?  What do I do?  How is this happening.

Dep. Of Sears, P. 77, L:16-24.

Obviously, the plaintiff was offended.  Plaintiff did not text Manager Morrison back after she received the penis picture. Dep. Of Sears, P. 79, L. 19-23.  Boeing suggests that this was a one-time, isolated event and that, evidently, no matter the degree to which the action was shocking and extreme, the case should be dismissed.  The facts involved in this case with Plaintiff go well beyond one isolated, yet extremely shocking and severe, instance to include sexual innuendo, jokes and constant sexual overtures.  Plaintiff was also informed by other Boeing Managers that Mr. Morrison had engaged in similar behaviors in the past.  Dep. Of Sears, P. 158:17-25.

Defendants are mistaken in their recitation of the law and facts involved in this case.  The merits of this case should be allowed to be weighed by a trier of fact so that justice prevails.  By Boeing's flawed reasoning, an act as extreme as rape would also be a claim ripe for dismissal as it would constitute just one, isolated event.  Boeing argues, essentially, that no

Opposition to MSJ
4 of 14

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

matter how severe or shocking an event may be, it should not allow a claim for harassment to move forward.  The law is clear that if a single incident is severe enough, it can and will suffice to constitute a hostile work environment and sexual harassment.  Glasgow v. Georgia-Pac. Corp., 103 Wn.2d 401, 406 (1985); Brooks v. City of San Mateo, 229 F.3d 917, 926 (9th Cir. 2000).  If what Mr. Morrison did does not reach the level of "severe enough" I have no idea what could in Defendant's eyes.  Surely, though, the weighing of the degree of severity of Morrison's actions is something suited to the trier of fact.

Mr. Morrison's actions are all imputable to Boeing because James Morrison was a manager, as shown through Boeing's own documents and admissions:

- Boeing's Proprietary EEO Investigation Report lists James Morrison's Pay Category as "Management" (Dec. of TPM, Ex. 1, TBC 0042);

- Boeing's Proprietary EEO Investigation Report on page 2 states Respondent 1 (James Morrison) is a "Manufacturing Manager K, in Renton location." (Dec. of TPM, Ex. 1, TBC 0043);

- The allegation section of the Boeing's Proprietary EEO Investigation Report states: "Tracey Sears stated that during the last week of November 2010, her former manager, James Morrison, began to joke with her.  Sears reported that the jokes increasingly became sexual.  Id.

- Boeing's EEO List of witnesses lists James Morrison as "Manufacturing Manager K." Dec. of TPM, Ex. 2.

- On Boeing's own report of Investigation labeled "Boeing Proprietary" and with Boeing's logo on the front page, it lists James Morrison Job Title as "MANUFACTURING MANAGER J."  This document also documents

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

Manager Morrison's inappropriate use of language and other derogatory statements, which Boeing investigated in January of 2010, well before plaintiff's allegations.  Dec. of TPM, Ex. 3, TBC 0298.

- Boeing was given a statement by Don Benjamin related to manager Morrison engaging in inappropriate behavior, including calling another manager a "piece of shit."  Dec. of TPM, Ex. 4, TBC 0301.

- Boeing's Proprietary Work History Summary for James Morrison lists his job title as "Manufacturing Manager K".  Dec. of TPM, Ex. 5 TBC 0305.

- Another Boeing Work History document shows that James Morrison was a "Manufacturing Manager J" from at least November of 2008.  Dec. of TPM, Ex. 6, TBC 0306.

- Lastly, Boeing's own performance review of James Morrison, the Performance Management Worksheet, states his Job Title as "Manufacturing Manager J" as of 2008.  Dec. of TPM, Ex. 7, TBC 275.

Under the law, all of James Morrison's conduct is imputed to the employer, because he is a manager.


### III.    STATEMENT OF ISSUE

Should Boeing's motion for summary judgment be denied when the Plaintiff has pled a pattern of sexually harassing behavior toward her by a manager through sexual jokes, rude comments and then by extremely lewd and disgusting behavior involving his sending Plaintiff a picture of his erect penis?

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

## IV.    EVIDENCE RELIED UPON

See Declaration of Thaddeus Martin.

## V. AUTHORITY AND ARGUMENT

**A.    THE SUMMARY JUDGMENT STANDARD IN DISCRIMINATION CASES IS NECESSARILY HIGH-THIS COURT MUST LIBERALLY CONSTRUE PLAINTIFFS' CLAIMS TO ACCOMPLISH THE PUBLIC POLICY OF FORBIDDING SEXUAL HARASSMENT AND ASSAULT AT THE WORKPLACE.**

In matters of employment discrimination, if summary judgment is too readily granted, there is a "risk of providing a protective shield for discriminatory behavior . . . ." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).  More specifically, Courts have "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses."  *Id.*  In the discrimination context, "summary judgment may not be granted simply because the Court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998).

> "We require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry" - one that is most appropriately conducted by the fact finder, upon a full record.'"

*Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994) (internal citation omitted).

Discrimination cases are by their very nature fact intensive; Washington Courts have consistently found "summary judgment in favor of employers is seldom appropriate in discrimination cases." *deLisle v.FMCCorp.*, 57 Wn. App., 79, 84, *rev. denied*, 114 Wn.2d 1026 (1990)(citation omitted); *also Sangster v. Albertson's*, 99 Wn. App. 156, 160 (2000)("Summary judgment should rarely be granted in employment discrimination

THADDEUS MARTIN & ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

cases."). As seen in the Summary of Facts above, the parties in this case present conflicting evidence regarding the material issues of facts in this case. As is often the case in employment claims, a determination of the facts will necessarily rely upon credibility determinations, which are not and cannot be properly resolved at the summary-judgment stage. *Amend v. Bell*, 89 Wn.2d 124, 129, 570 P.2d 138 (1977); *Kamla v. Space Needle Corp.*, 105 Wn. App. 123, 19 P.3d 461 (2001). Through this brief and the accompanying declarations, plaintiff has presented sufficient evidence of unlawful sexual harassment to proceed to trial.

### B. WASHINGTON LAW AGAINST DISCRIMINATION REQUIRES LIBERAL CONSTRUCTION IN ORDER TO ACCOMPLISH THE PURPOSES OF THE LAW.

First off, this Court must keep the law's purpose in mind when reviewing sexual discrimination/assault cases which violate public policy. The Supreme Court has declared that the eradication of sexual discrimination "embodies a public policy of the 'highest priority' " *Allartmi v Boeing,* 137 Wn.2d 357, 364, 971 P.2d 45 (1999). citing *Xieng v. Peoples Nat'l Bank,* 120 Wn.2d 512, 521, 844 P.2d 389 (1993) quoting *Allison v. Housing Auth.,* 118 Wn.2d 79, 821 P.2d 34 (1991); *Marquis v. City of Spokane, 130* Wn.2d 97, 922 P.2d 43 (1996). As the Supreme Court has stated, 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. As a result, when a court too readily grants summary judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated. *McGinest v. GTE Service Corp.,* 360 F.3d 1104, 1112 (9th Cir. 2004).

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

The "public policy" is one for which there must be an authoritative public declaration of the nature of the wrong. The tort of sex discrimination in employment is a clearly articulated public policy violation. _Roberts v. Dudley,_ 140 Wn.2d 58, 993 P.2d 901 (1999). This clearly articulated public policy is based on RCW 49.12.200 and RCW 49.60.010 and has been previously recognized in _Marquis v. City of Spokane,_ 130 Wn.2d 97, 105, 922 P.2d 43 (1996), and was affirmed in _Roberts v Dudley._

In summary, this Court must view all facts in favor of the plaintiff and also must be open-minded (liberal) in accepting plaintiff's facts to accomplish the purpose of the law in support of public policy- the eradication of sexual harassment and assault in the work place in Washington State.

## C.      HOSTILE ENVIRONMENT -MORE THAN ENOUGH HERE.

### 1. Plaintiff's Prima Facie Case.

One day can cause a hostile work environment if severe enough, especially when that one day includes several sexual, criminal assaults on the plaintiff by her boss.  To establish a prima facie claim of hostile work environment, the plaintiff must produce competent evidence of each of the following elements: (1) that the harassment was offensive and unwelcome; (2) that it occurred because of sex; (3) that it affected the terms or conditions of employment; and (4) that the harassment can be imputed to the employer. _Washington v. Boeing Co.,_ 105 Wn. App. 1, 19 P.3d 1041 (2000); _Sangster v. Albertson's, Inc.,_ 99 Wn. App. 156, 160, 991 P.2d 674 (2000).

### 2. Offensive and unwelcome.

Conduct is unwelcome if the employee does not solicit or incite it and regards it as

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

undesirable or offensive. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985). "While the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact, the [trial court] in this case erroneously focused on the 'voluntariness' of respondent's participation in the claimed sexual episodes. Id.  Plaintiff, as the nonmoving party, is entitled to all reasonable inferences being drawn in her favor. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

As the plaintiff demonstrated above, the harassment that she received from her manager and boss, Mr. Morrison, was unwelcome and offensive. The plaintiff testified that the comments and conduct from Morrison was unwanted, creepy, gross and made her uncomfortable.

Plaintiff never asked Morrison to send her nude pictures and she never sent Morrison any pictures.  It is safe to say that this conduct was offensive and unwelcome.

This is a case of blatant, direct sexual assault and harassment perpetrated by a Boeing Manager and plaintiff's boss.  This is not a case of subtleties.   There was no legitimate employment reason for Morrison's constant sexually harassing actions.   This sexual treatment was blatant and cannot be explained by the defendants.   This is a case of "smoking gun" evidence of sexual assault and harassment.

### 3. Based on Sex.

"The question to be answered here is: would the employee have been singled out and caused to suffer the harassment if the employee had been of a male?" *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d at 406. "[T]he question of an employer's intent to discriminate is a pure question of fact." *Johnson*, 80 Wn. App. at 229.  The evidence is such that the jury

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

could find that the Plaintiff was harassed by her supervisors and owner causing the hostile environment. No one can seriously dispute that the facts as described above would have happened had the plaintiff been a male. Obviously, it is about sex and the fact that plaintiff is female, let alone a young, attractive one.

**4. Affecting terms or conditions of employment/membership- One Single Incident/Sexual Assault is Enough.**

Under the law, one single incident can be enough to create a sexually hostile environment and in this case we have several incidences of sexual assaults by the boss. Whether the harassment at the work place is sufficiently severe and persistent to seriously affect the emotional or psychological well being of an employee/member is a question to be determined with regard to the totality of the circumstances. *Glasgow,* 103 Wn.2d at 406-07. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). The "totality of the circumstances" test obliges the Court to consider carefully "the social context in which particular behavior occurs and is experienced by its target." *Oncale,* 523 U.S. at 81. Under the "totality of the circumstances" approach, a court should not carve the work environment into a series of discrete incidents and then measure the harm occurring in each episode." *Jackson v. Quanex Corp.,* 191 F.3d 647, 660 (6th Cir. 1999); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1484 (3rd Cir. 1990) ("To consider each offensive event in isolation would defeat the entire purpose of allowing claims based upon a "hostile work environment" theory, as the very meaning of "environment" is "the surrounding conditions, influences or forces which influence or

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

1 modify").

2      Although this case involves countless acts of harassment, including sexual joking,

3 comments and innuendos by plaintiff's manager, under the case law a single incident of

4 harassment can support a claim of hostile work environment because the "frequency of the

5 discriminatory conduct" is only one factor in the analysis. *See Little v. Windermere*, 265

6 F.3d at 911, citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126

7 L.Ed.2d 295 (1993) (noting that no single factor is required).  Conduct is actionable if it is

8 either "sufficiently severe *or* pervasive." Id.  Just as every murder is also a battery, every

9 sexual assault committed in the employment setting is also discrimination based on the

10 employee's sex.  Id.

11      Defendants cite the case of *McDonald v. Korum Ford, 80 Wash.App. 877, 912 P.2d

12 1052 (1996)* for the proposition that a single kiss does by a boss is not severe enough to

13 create a hostile environment.  Of course, there is more to this case than Defendants reveal.

14 In McDonald, the plaintiff was fired for poor sales performance, waited six months and then

15 filed a lawsuit alleging sexual harassment.  Specifically, the McDonald plaintiff at her

16 deposition provided testimony that she was "very surprised" by Huber's New Year's Eve

17 kiss because it was "out of character" for him and she acknowledged that.  The McDonald

18 plaintiff also identified another male employee that made it a habit of coming up behind her

19 and placing his hand on her back and his habit of positioning himself in the office hallway

20 so she would brush against him when she passed; but she testified that she did not perceive

21 these actions to be sexual harassment at the time they occurred and never complained about

22 this behavior to the Korum Ford management team.  The Court specifically found that the

23 MacDonald plaintiff did not testify that the actions were physically threatening or

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

humiliating or that they unreasonably interfered with her work performance.[1]

Indeed the Supreme Court has noted that an isolated incident can amount to a discriminatory change in the terms and conditions of employment" when the incident is "extremely serious." *Clark County School District v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1510, 149 L.Ed.2d 509 (2001). To determine whether an environment is sufficiently hostile or abusive we look "at all the circumstances, including the severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1510, 149 L.Ed.2d 509 (2001). Moreover, "the work environment must both subjectively and objectively be perceived as abusive," *Fuller, 47 F.3d at 1527* (citation omitted), and the objective portion of the claim is evaluated from the reasonable woman's perspective. *Ellison, 924 F.2d at 879-80*. Under the circumstances, it would have made a reasonable woman feel that her work environment had been altered after she was repeatedly sexually harassed by her boss and then sent a vulgar nude picture of him.

**5. Imputed to employer.**

James Morrison's actions are imputed to Boeing as a matter of law because he was a

---

[1] The "slam dunks" where courts have found per se sexual harassment are varied. Our case resembles the case of *Glasgow, 103 Wash.2d at 402, 693 P.2d 708* (co-worker used abusive language around females and "touched and fondled" female employees); *Harris, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295* (women employees subjected to sexual innuendo, asked to retrieve **1059 coins from president's front pocket, and asked to retrieve objects purposefully tossed on the floor); *Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)* (bank manager demands sex from, fondles, exposes himself to, and rapes female employee); *Ellison v. Brady, 924 F.2d 872 (9th Cir.1991)* (prima facie case of hostile work environment established by "bizarre" love letters from co-worker which frighten and upset employee); *Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir.1990)* (use of derogatory and insulting terms to describe and address women employees and posting of pornography in common areas and personal work spaces of women employees establish prima facie case of hostile work environment); *E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504 (9th Cir.1989)* (male chief engineer makes frequent sexual comments and advances on maids; female supervisor calls female employees "dogs" and "whores"). *See also Chamberlin v. 101 Realty, Inc., 915 F.2d 777 (1st Cir.1990)* (five instances of inappropriate comments about employee's appearance and/or sexual advances not sufficiently severe or pervasive to sustain hostile work environment allegation).

THADDEUS MARTIN &
ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420

manager, as demonstrated by Boeing's own proprietary documents described above. "Where an owner, manager, partner, or corporate officer personally participates in the harassment, this element is met by such proof." _Glasgow, 103 Wn.2d at 407_. The plaintiff's have established a prima facie case of hostile work environment. A **hostile environment authorized or caused by supervisors** is **attributable** to the Defendant-employer. _See Sangster v. Albertson's, Inc., 99 Wn.App. 156, 164, 991 P.2d 674 (2000)_. "Conduct is imputable to the employer if it is the conduct of an owner, manager, partner, or corporate officer, or, alternatively, if it is the conduct of a manager which the employer authorized, knew of, or should have known of, and the employer 'failed to take reasonably prompt and adequate corrective action.'" _Schonauer v. DCR Entertainment, Inc._, 79 Wn. App. 808, 821 (1995) (_quoting Glasgow_, 103 Wn.2d at 407and emphasis added).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny defendant Boeing's motion for summary judgment.


Dated this 1st day of February, 2012.


THADDEUS P. MARTIN AND ASSOCIATES

By
Thaddeus P. Martin, WSBA 28175
Attorneys for Plaintiff

THADDEUS MARTIN & ASSOCIATES
4928 109th Street SW
Lakewood, Washington 98499
(253) 682-3420